IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DOLORES GONZALES,**

       **Plaintiff,**

vs.                                                 No.  99cv1295 LH/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Gonzales') Motion to Reverse Administrative Decision, filed June 12, 2000.  The Commissioner of Social Security issued a final decision denying Gonzales' application for supplemental security income.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to reverse is not well taken and recommends that it be DENIED.

      Gonzales, now fifty-one years old, filed her application for supplemental security income on **August 22, 1991**, alleging disability since August 7, 1991, due to injuries sustained in an automobile accident.  Specifically, Gonzales alleges degenerative disc disease and strain of the lumbar and cervical spine, status post left knee surgery with bilateral arthritic change, obesity, and history of depression.  She has an eleventh grade education with past relevant work as a health care aide and helper.  **On April 13, 1993**, the Commissioner's Administrative Law Judge (ALJ) found Gonzales was not disabled.  Tr. 137-144.  The ALJ found that Gonzales' chronic knee pain,

back and neck symptoms constituted severe impairments, however, these impairments did not meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1.  *Id.*  Relying on the Medical-Vocational Guidelines, the ALJ found Gonzales was not disabled.  *Id.*  On March 15, 1994, the Appeals Council vacated the ALJ's decision and remanded the case.  Tr. 149.  The Appeals Council found the ALJ had failed to address Gonzales' mental impairment and had failed to consider the consultative physician's opinion regarding Gonzales' inability to sit, stand or walk for longer than 20 minutes without being allowed to change position as necessary.  Tr. 149, 150.  Upon remand, the Appeals Council directed the ALJ to:

> Give consideration to the examining source opinion and pursuant to the provisions of 20 C.F.R. § 416. 927, provide good reasons for the weight given such opinion evidence.
>
> Give further consideration to the claimant's residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations(20 CFR § 416.945 and Social Security Rulings 85-16 and 86-8), including rational for the "B" and, as applicable, the "C" criteria ratings in the Psychiatric Review Technique Form.
>
> If warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14 and *Channel v. Heckler*, 747 F.2d 577, 582 (10th Cir. 1984)).  In so doing, the Administrative Law Judge must ensure that the hypothetical questions reflect the specific capacity/limitations established by the record as a whole.

Tr. 150.  Upon the Order of Remand issued by the Appeals Council, the ALJ held a supplemental hearing on July 13, 1994.  At the **July 13, 1994** supplemental hearing, the vocational expert (VE) testified Gonzales could perform the jobs of document runner, medication packager, and file clerk.  Tr. 18.  However, the VE could not provide an estimate of the number of such jobs in the national or regional economy.  *Id.*  The ALJ requested the VE submit this information after the hearing.  The VE provided the requested information on **July 19, 1995**, **over a year after the**

**administrative hearing**.  *Id.*

  **On August 25, 1995**, the ALJ found Gonzales had "severe and non-severe medically determinable impairments associated with degenerative disc disease and strain of the lumbar and cervical spines; status post left knee surgery with bilateral arthritic change; obesity; and history of depression."  Tr. 19.  However, the ALJ denied benefits, finding Gonzales did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1.  *Id.*  Moreover, the ALJ found Gonzales did not have a severe psychological or intellectual impairment.  *Id.*  The ALJ found Gonzales not credible based on inconsistencies given by Gonzales to different health care providers.  Tr. 20.  The ALJ also concluded Gonzales did not suffer any significant functional limitations associated with her depression.

  **On September 11, 1995**, Gonzales filed a Request for Review of the ALJ's August 25, 1995 Decision.  The Appeals Council denied the Request for Review.  Gonzales then sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  In her motion to reverse, Gonzales complained, *inter alia*, that the ALJ had failed to follow the mandate of the Appeals Council and did not consider the impact of Gonzales' depression on her ability to perform the physical and mental demands of her work.

  **On July 15, 1998**, the United States District Judge adopted the May 26, 1998 United States Magistrate Judge's Analysis and Recommended Disposition and remanded the case to the Commissioner to allow the ALJ to re-examine Gonzales' mental impairment.  Tr. 367-378.  In his Analysis and Recommended Disposition, the magistrate judge noted the ALJ's hypothetical to the VE failed to take her psychological limitations into account.  However, the magistrate judge

found it had no jurisdiction to address Gonzales' argument that the ALJ had failed to comply with the Appeals Council remand order. Tr. 371. The magistrate judge found the ALJ's finding that Gonzales suffered no deficiencies of concentration, persistence and pace was not supported by substantial evidence. *Id.* The Court further found:

> Dr. Krieger opined that Gonzales had borderline intellectual functioning and that she was in need of professional help for depression. He found she had problems with concentration and memory. In particular, he found that the combined effect of her medical problems, learning problems and depression would have a serious impact on her ability to work. These findings were echoed in Dr. Goodlive's report. Dr. Goodlive found Gonzales had problems with memory and he opined that under the best scenario, she might have low normal intellectual abilities, but that she had tested borderline. Dr. Goodlive completed an assessment entitled "Medical Assessment of Ability to do Work Related Activities (Mental). There, he rated as fair, and possibly poor, due her emotional problems, Gonzales' ability to work with work stresses, maintain attention/concentration, her ability to understand, remember and carry out complex job instructions and to behave in an emotionally stable manner. In *Cruse v. Department of Health and Human Services*, 49 F.3d 614, 618 (10th Cir. 1995), the Tenth Circuit held that according to the form's definition, a marking of "fair" on the medical assessment form was evidence of disability. The ALJ did not consider this. Even more troublesome, is that the evaluation cautioned that because of Gonzales' emotional problems, the rating may be poor. Dr. Goodlive's assessment is consistent with his written report.

> The Court also considers the evidence submitted to the Appeals Council and considered by it. *O'dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Thus, the Court also considered the March 7, 1996 initial psychiatric evaluation made by Jefferson K. Davis, M.D. (TR 199-200). Dr. Davis opined that Gonzales had a major depressive disorder, moderate, recurrent. The ALJ's evidentiary abstract fails to accurately reflect the totality of the psychological records. Thus, it constitutes an impermissible basis to support a denial of benefits. *Edgar v. Shalala*, 859 F.Supp. 521, 525 (D.Kan. 1994). The ALJ further erred in his completion of the Psychiatric Review Technique form (PRT). The Social Security regulations allow the ALJ to complete the form alone or with the aid of a medical advisor. *Cruse,* 49 F.3d at 617. However, when completed without assistance, the ALJ must discuss "the evidence he considered in reaching the conclusions expressed on the form.'" *Id.* at 618 (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994). In the instant action, the ALJ stated"

> I conclude that she seldom suffers from deficiencies of
> concentration, persistence, and pace.  There is no documentation of
> any episode of deterioration or decompensation in work or work-
> like settings.

This statement recites the conclusions contained on the PRT.  It does not discuss the evidence of Gonzales' mental problems or discuss how that evidence supports the conclusions contained in the PRT.  The absence of conclusive medical evidence cannot meet the Commissioner's burden at Step five, even when a claimant has been found not credible.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Tr. 371-373.

**On October 26, 1999**, a different ALJ, after holding an administrative hearing on **May 25, 1999**, found Gonzales had a severe mental impairment that had more than a minimal effect on her ability to work.  Tr. 296.  However, the ALJ found Gonzales "had not had any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1, Social Security Regulations No. 4."  Tr. 296.  The ALJ considered Listings 1.05C, 1.03, 12.05, 12.04 and 12.07.  *Id.*  The ALJ found as follows:

> She does not have reflex loss or motor loss to comport with the requirements of § 1.05C.  Her ability to stand and walk is not markedly limited to comport with the requirements of § 1.03.  I find that she does not have a valid IQ score of 70 or below.  The first IQ testing did have a performance and full scale IQ of testing, but subsequent testing showed higher scores and postulated still higher actual functioning (Exs. 30 and 36).  Therefore she does not meet the requirements of § 12.05C.  The obesity listing has been eliminated effective October 25, 1999.  She has some depression with moderate symptoms, but has never received treatment beyond medication.  She has been referred for counseling, but has never attended.  Her depressive symptoms consist mainly of tiredness (Ex. 57).  The consultative examiner did not even diagnose depression, though he indicated that this was possible he also he also thought that she was exaggerating her symptoms (Ex. 34).  The diagnosis in the first examining opinion was based on her subjective responses to the Beck depression inventory only (Ex. 30).  The last diagnosis states no objective basis at all (Ex. 66).  The consultative examiner indicted that she had a

> good ability to maintain personal appearance, relate predictably in social situations and demonstrate reliability, indicting no serious problems in daily activities. With regard to social functioning she had a good ability to relate to co-workers and supervisors. He indicated only a fair ability to maintain attention and concentration, but also indicated that she had a good ability to understand, remember and carry out simple and detailed instructions, but only a fair ability to handle complex instructions. Read in conjunction with the narrative report I find that she often has limitations in concentration, persistence and pace. He indicates that her problems might cause difficulty dealing with work stresses. I find that her abilities in these areas are limited but satisfactory, equating with one or two episodes of deterioration. Therefore, her emotional problems do not meet or equal the requirements of §§ 12.04 or 12.07 (See attached PRT form).
>
> The claimant has symptom-producing medical problems but exaggerates the symptoms and functional limitations produced thereby. Hence, the claimant's testimony does not credibly establish symptoms or functional limitations to the extent alleged.
>
> Specifically, the claimant testified that her knee gives out making it difficult for her to walk for long distance or use stairs. However, she told her doctor that she experienced occasional locking, but that otherwise her knee did not bother her (Ex. 19). She states that she does not dive (sic), but did drive to the last hearing, although she did not have a license (Ex. 48-51). She testified that despite her claims of depression she has never sought counseling. She was referred to counseling on several occasions, but did not follow up with these recommendations (Ex. 59). She testified that she has never had medications for her depression, though the medical record indicates that she was taking Zoloft for a time (Ex. 52-2). She has taken Ibuprofen and Tylenol for pain (Ex. 56). However, she apparently takes no medication on a regular basis (Ex. 58). Her earnings record does not reflect much employment even prior to her injuries. She says that she occasionally does ceramics at a local activity center. She also is able to perform her housework and in the past has cared for her grandchildren. She claims that her ankles swell, but has established no medically determinable impairment which could be reasonably expected to cause such problems. After considering the record as a whole, including the factors in 20 C.F.R. § 416.929 and pertinent Tenth Circuit caselaw, I substantially discount the claimant's subjective complaints.

Tr. 296, 297. On November 5, 1999, Gonzales filed this action, seeking judicial review of the

ALJ's decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health and Human Servs.,* 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

    In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand, Gonzales makes the following arguments: (1) the ALJ's credibility analysis is flawed by a misreading of the applicable medical record; (2) the ALJ's vocational hypothetical does not contain all of the psychological and physical impairments which are supported by substantial evidence; (3) the ALJ failed to adequately consider the psychological impairments as discussed in this Court's previous decision; and (4) the ALJ failed to discuss the evidence regarding her limitations on daily activities as testified by Plaintiff and her neighbors.

**Credibility Determination**

Gonzales contends the ALJ erred in concluding her testimony was not credible. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health and Human Servs.*, 898

F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

In his October 26, 1999 Decision, the ALJ found Gonzales not credible for several reasons.  The ALJ specifically found Gonzales had (1) testified that she did not drive but admitted to driving to the last administrative hearing; (2) testified she had never had medications for her depression yet the record indicated she had been on Zoloft; (3) testified she had disabling pain, however, she took only Ibuprofen and Tylenol and not on a regular basis; (4) claimed she was depressed yet did not seek counseling; and (5) her earnings record did not reflect much employment prior to her injuries.  Tr. 297.  Therefore, the ALJ explained why he concluded Gonzales' subjective complaints were not credible and cited to specific evidence in the record. Accordingly, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

**<u>Gonzales' Mental Impairment</u>**

Gonzales next claims the ALJ did not give adequate consideration to the psychological reports of Dr. Krueger, Dr. Goodlive, and Dr. Davis.  On June 27, 1994, Dr. Krueger, a psychologist, evaluated Gonzales at the request of her Disability Claims Assistance representative. Dr. Krueger reported that both the mental status examination and the test results indicated Gonzales was "showing symptoms of suffering from a serious degree of depression."  Tr. 161. Dr. Krueger performed the following: (1) Clinical interview with Psychosocial History and Mental Status Examination; (2) Wechsler Adult Intelligence Scale-Revised (WAIS-R); (3) Beck Depression Inventory (BDI); (4) Bender Visual Motor Gestalt Test; and (5) Wide Range

9

Achievement Test-Reading (WRAT). Tr. 157. Based on the results of the tests and the clinical interview, Dr. Krueger found Gonzales had (1) scores on the WAIS-R IQ test which were all within the range of borderline intellectual functioning; (2) scores on the BDI which indicated a serious degree of depression, requiring professional treatment; and (3) scores on the Bender Gestalt test indicating emotional conflict. Tr. 159, 160. Dr. Krueger diagnosed Gonzales with major depressive disorder and borderline intellectual functioning. Specifically, Dr. Krueger found Gonzales' scores on the WAIS-R subtest scores "fairly consistent" and "all significantly below average." Tr. 160. Dr. Krueger opined that the "pattern of uniformly low scores suggest[ed] diffuse brain dysfunction which probably had been of long-term duration." *Id.* Dr. Krueger concluded Gonzales "presented herself as being a person who is experiencing a great deal of emotional distress, and the combination of medical problems, learning problems, and depression are likely to cause a serious degree of impairment in her working ability. These conditions are likely to persist for more than one year." Tr. 161.

On March 10, 1995, Dr. Goodlive conducted a clinical interview with a Mental Status Examination and administered the Wechsler Memory Scale-Revised (WMS-R) and the Wechsler Adult Intelligence Scale-Revised (WAIS-R). Dr. Goodlive also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) and reviewed Dr. Krueger's psychological evaluation.

On the Medical Assessment of Ability to do Work-Related Activities (Mental), Dr. Goodlive rated Gonzales as "Good" on all areas and "Fair" on the following: (1) dealing with work stress; (2) maintaining attention and concentration; (3) understanding, remembering, and carrying out complex job instructions; and (4) behaving in an emotionally stable manner. Tr. 185.

10

A rating of "Good" indicated an ability to function in the particular area was limited but satisfactory. *Id.* A rating of "Fair" indicated an ability to function in the particular area was seriously limited but not precluded. *Id.* Dr. Goodlive explained his "Fair" ratings by noting that Gonzales' emotional problems might interfere. Tr. 185, 186.

In his findings, Dr. Goodlive noted Gonzales had arrived over an hour and a half late and was tired and upset during the interviewing and testing. Tr. 187. Because of the circumstances, Dr. Goodlive did not administer several of the WAIS-R subtests due to his observation that "the circumstances were most likely diminishing her performance and level of effort." *Id.* Dr. Goodlive opined that the WAIS-R results underestimated Gonzales' intellectual abilities. *Id.* Dr. Goodlive specifically noted "**If valid**, these scores would place Ms. Gonzales in the 'Borderline' range of intellectual functioning." Tr. 189. Based on his observation and his conversation with Gonzales, Dr. Goodlive opined she possessed at least "Low Normal" intellectual abilities, IQ 80-89. *Id.* Regarding attention and concentration, Dr. Goodlive found Gonzales scored 4 out of 6 possible points on the WMS-R Mental Control subtest, which was "not a marked low score." Tr. 188. Again, Dr. Goodlive qualified the results on the basis of the circumstances which he felt were unusual and stressful. *Id.*

Dr. Goodlive also found no signs of formal thought disorders and commented on Gonzales' ability to express herself quite well after she had calmed down. *Id.* Regarding affective disorder, Dr. Goodlive found Gonzales "may be suffering from depression." Tr. 189. However, Dr. Goodlive qualified this finding stating he had "no independent source of information to substantiate this." Tr. 190. Additionally, Dr. Goodlive reported his belief that Gonzales was "exaggerating her distress and not making her best efforts during testing." *Id.*

11

Finally, Dr. Goodlive opined that Gonzales' principal mental impairments derived from emotional factors relating to injuries and not from major intellectual limitations. *Id.*

On March 7, 1996, Dr. Davis, a psychiatrist, performed a psychiatric evaluation on Gonzales at the request of the New Mexico Income Support Division. Dr. Davis diagnosed Gonzales with major depressive disorder, moderate and recurrent. Dr. Davis opined Gonzales was depressed due to chronic pain and disappointment about being turned down for disability. Tr. 394. Dr. Davis also noted that "despite the prolonged course of her symptoms, she had not been treated for the depression." *Id.* Dr. Davis concluded Gonzales could not currently work and "given her limited skills and chronic pain it [was] unlikely that she [would] be able to engage in employment in the future." *Id.* Dr. Davis, however, recommended re-evaluating Gonzales after she received treatment for her depression. *Id.* Dr. Davis recommended Gonzales receive antidepressant medication, psychotherapy and behavioral pain management. *Id.* Dr. Davis referred Gonzales to three different mental health providers that would provide this treatment at a low cost to Gonzales in the event that she did not qualify for Medicaid. Tr. 395. Dr. Davis felt it was "imperative that she follow through with one of these options." *Id.*

On March 6, 1997, Dr. Cave, a psychologist, performed a psychological evaluation on Gonzales at the request of the New Mexico Income Support Division. Tr. 396. Dr. Cave described Gonzales as "defensive, guarded, and somewhat evasive." *Id.* Dr. Cave diagnosed Gonzales as suffering from Adjustment disorder with depressive features and noted passive-dependent features and severe psychosocial stressors. Dr. Cave concluded that Gonzales was

> a whiny, dependent woman who presents with a chronic pain syndrome. She is an angry, bitter woman who indeed has a sense of hopelessness and helplessness about her. The chronic pain syndrome make her irritable and cranky and has led to

>development of a depression.  Her prognosis for change is quite guarded as she
>appears identified with a disabled, helpless role.  She feels victimized by her
>circumstances in life and feels she has little control over her life.  It is
>recommended that she be referred to the Community Guidance Center[1] for anti-
>depressant medication as well as counseling support.

Tr. 399.

On July 19, 1999, Dr. Maria L. Santa-Maria, the Associate Executive Director for Catholic Social Services of Santa Fe, wrote a letter in support of Gonzales, certifying she had seen Gonzales for a counseling appointment.  Tr. 432.  Dr. Santa-Maria opined that Gonzales was suffering from depression due to Post Traumatic Stress Disorder and chronic physical pain.  *Id.*  Dr. Santa-Maria also opined that "these factors [made] her disabled and they [made] it virtually impossible for [her] to function in a work situation.  *Id.*

The ALJ considered these consultative opinions and found Gonzales had a severe mental impairment.  However the ALJ concluded Gonzales' mental impairment did not meet or equal the requirements of Listing12.04 (Affective Disorders) or Listing 12.07(Somatoform Disorders).  Tr. 296.  The ALJ also completed a Psychiatric Review Technique Form (PRT) and evaluated Gonzales under Listings 12.04, 12.05(Mental Retardation), 12.07 and 12.08(Personality Disorder).  Tr. 300.  The ALJ found Gonzales did not meet Listing 12.04 because Gonzales had not received treatment even though she had been referred for counseling on more than one occasion.  The ALJ also relied on Dr. Goodlive's evaluation and found Gonzales exaggerated her

---

[1] On June 2, 1999, an intake coordinator from the Community Guidance Center wrote to Gonzales' counsel to inform him that on April 27, 1999, Gonzales called the Community Guidance Center intake office, stating she needed an appointment in order to be re-certified for General Assistance by April 30, 1999.  The intake coordinator informed Gonzales' counsel that Gonzales had not qualified for their services, however, Gonzales had been referred to Catholic Social Services.

symptoms. The ALJ also relied on Dr. Goodlive's opinion that Gonzales IQ scores were invalid due to the testing conditions and accepted Dr. Goodlive's assessment that Gonzales' IQ was in the low normal range. Because the ALJ gave more weight to Dr. Goodlive's evaluation, he did not accept Dr. Krueger's assessment of Gonzales' impairments. The ALJ also discounted Dr. Santa-Maria's opinion. The ALJ did not discuss Dr. Davis' evaluation.

The Social Security regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). In this case, the psychiatrist and psychologists who performed these evaluations cannot be considered Gonzales' treating psychiatrist or treating psychologists. In fact, the record reflects Gonzales made little or no effort to get the recommended treatment unless it was required of her in order for her to continue receiving general assistance from the state or to pursue her SSI claim. Accordingly, the ALJ did not have to give more weight to one opinion over another.

Additionally, Dr. Goodlive's opinion conflicted with Dr. Krueger's opinion as to Gonzales' intellectual functioning. When conflicting medical evidence exists, it is the trier of fact who has the duty to resolve that conflict. *Casias v. Secretary of Health and Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). In this case, the ALJ adopted Dr. Goodlive's opinion. The Court will not reweigh the evidence or substitute its judgment for that of the agency. *Id.* at 800.

Gonzales contends that the findings in Dr. Goodlive's Medical Assessment form would support a finding that she is disabled. As previously noted, Dr. Goodlive rated Gonzales as "Fair"

14

in her ability (1) to deal with work stresses; (2)  maintain attention and concentration; (3) remember and carry out complex job instructions; and (4) behave in an emotionally stable manner. A rating of "Fair" indicated an ability to function in this particular area is seriously limited but not precluded.  However, the ALJ specifically qualified his rating in all these areas by noting that Gonzales' "emotional problems might interfere."  Tr. 185, 186.  In his written report, Dr. Goodlive specifically reported Gonzales had scored 4 out of 6 in the area of attention and concentration, which he felt was "not a marked low score."  Tr. 188.  Dr. Goodlive further noted that the "circumstances of testing were unusual and stressful and could have been a factor" in the results.  *Id.*  Dr. Goodlive also found Gonzales was able to express herself "quite well when she had calmed down."  *Id.*   Moreover, Dr. Goodlive noted Gonzales "may have been exaggerating her distress and not making her best efforts during testing.  Tr. 190.

Dr. Davis and Dr. Santa-Maria opined Gonzales was disabled.  However, the regulations are clear that the Commissioner is responsible for the determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404. 1527(e)(1).  Opinions that a claimant is disabled are not given any special significance.  20 C.F.R. § 404. 1527(e)(3).  Based on the record as a whole, the Court finds that substantial evidence supports the ALJ's finding that Gonzales was not disabled.

**Hypothetical to the Vocational Expert**

Gonzales also contends that the ALJ erred in failing to include her subjective complaints in the questions posed to the vocational expert.  Specifically, Gonzales contends the ALJ should have included her complaint that she had to lie down about four times for at least half an hour during the daytime.  Gonzales further contends the ALJ's hypothetical to the vocational expert

15

should have comported with Dr. Goodlive's Medical Assessment form.  However, the ALJ is bound only by vocational testimony regarding impairments he has accepted as true.  *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).  In this case, the ALJ did not accept Dr. Goodlive's Medical Assessment form or find Gonzales' subjective complaints credible.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and his decision is supported by substantial evidence.  Gonzales' Motion to Reverse Administrative decision, filed June 12, 2000, should be denied, and this case should be dismissed.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.